UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

FRANK ANNUNZIATA,

Plaintiff,

-against-

ANTHONY FANWICK, S.C.P.D., #6486, and JOHN DOES 1-2,

Defendants.

-----------------------------------------------------------x

**MEMORANDUM AND OPINION**
22-CV-2580(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the court in this civil rights action brought pursuant to 42 U.S.C. § 1983 ("Section 1983") for excessive force in violation of the Fourth Amendment and failure to provide necessary medical care in violation of the Fourteenth Amendment, is Defendant Anthony Fanwick's ("Defendant" or "Fanwick") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [88]. Plaintiff Frank Annunziata ("Plaintiff" or "Annunziata") opposes the motion. DE [88-12]. For the reasons set forth herein, Defendant's motion is denied.

## I. BACKGROUND

### A. Factual Background

On June 23, 2019, Annunziata purchased heroin containing fentanyl in the parking lot of the Sunshine Square Mall in Medford, New York. *See* Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl.'s 56.1 Counterstmt."), DE [83-14],

at ¶¶ 6-7. Plaintiff injected the drugs in his car and subsequently attempted to drive away. *Id.* at ¶ 8. While stopped at the parking lot's exit, however, Annunziata passed out. *Id.* at ¶ 9. As Annunziata was unconscious, a bystander pulled up behind him to exit, but was blocked. *Id.* at ¶¶ 10-12. The bystander honked his horn and knocked on Plaintiff's window, but Annunziata remained unresponsive, prompting the bystander to call 911. *Id.* at ¶¶ 13-15. At 4:05 p.m., Fanwick, an officer for the Suffolk County Police Department ("SCPD"), was dispatched. *Id.* at ¶ 5. When Defendant arrived, Annunziata was still asleep behind the wheel of his car. *Id.* at ¶ 19. Fanwick knocked on Plaintiff's window, at which point he woke up and "lurched forward" in the car. *Id.* at ¶ 21.

The parties disagree about the events related to the ensuing arrest. Although it is undisputed that Annunziata and Fanwick ultimately ended up on the ground outside of Plaintiff's car, Fanwick testified that he remembers "helping [Plaintiff] out of the car." Fanwick Deposition Transcript ("Fanwick Dep. Tr."), DE [88-17], at 39:7-8. In contrast, Annunziata testified that he "remember[s] being grabbed, pulled out of the vehicle and thrown on the ground." Annunziata Deposition Transcript ("Annunziata Dep. Tr."), DE [88-16], at 34:3-4. Plaintiff further testified that Fanwick kneed him in the back. *Id.* at 43:14-23. It is undisputed that, once Plaintiff was out of the car and on the ground, he was holding the remaining drugs he had purchased. *See* Pl.'s 56.1 Counterstmt. ¶ 24.

Fanwick testified that, once on the ground, he observed Plaintiff attempting to pull out what "appeared to be narcotics, and he was putting it towards his mouth."

Fanwick Dep. Tr. at 42:4-5. Plaintiff denies attempting to place the drugs in his mouth, claiming that he "didn't have time to do that." Annunziata Dep. Tr. at 30:21-23. The parties further disagree about the manner in which the arrest was conducted. Defendant testified that he was "getting elbowed" while putting Annunziata in handcuffs, and that Annunziata's elbows were going "back into [Fanwick's] chest," causing Fanwick to fear for his safety. Fanwick Dep. Tr. at 43:1-16. Annunziata denies this, claiming that he did not use his elbows in any way because "there were four officers on [him]." Annunziata Dep. Tr. at 43:12-19. According to Annunziata, these officers "jumped on [his] back," "kneed him in the back," and "broke [his] ribs." *Id.* at 43:2, 47:21-22. Fanwick does not dispute that he punched Annunziata in his torso during the course of the arrest. *See* Pl.'s 56.1 Counterstmt. ¶ 33. Ultimately, Defendant arrested Plaintiff and brought him to the 5yj Precinct for processing. *Id.* at ¶¶ 35-37.

Defendant asserts that, at 9:03 p.m., Plaintiff "reported for the first time that his chest hurt and asked for an ambulance." *Id.* at ¶ 38. Annunziata disputes this, claiming that he requested medical attention "right off the rip," as well as telling Fanwick that "there was something wrong" and that he couldn't breathe. *See* Annunziata Dep. Tr. at 47:19-22. Eventually, at 9:38 p.m. the Patchogue Ambulance Company was called and brought Annunziata to Long Island Community Hospital. *See* Pl.'s 56.1 Counterstmt. ¶ 40. Medical records reflect that his primary complaint was "Ribcage Pain," and that it was determined he had a fractured rib, requiring a

chest tube for a partially collapsed lung. *See* Declaration of Martin Bell ("Bell Decl."), DE [88-15], Ex. 5.

Ultimately, Plaintiff was charged with criminal possession of a controlled substance in the 7th degree in violation of N.Y. Penal Law § 220.03, resisting arrest in violation of N.Y. Penal Law § 205.30, tampering with physical evidence in violation of N.Y. Penal Law § 215.40(2), aggravated unlicensed operation in the third degree in violation of N.Y. Veh. & Traf. Law § 511(1)(a), improper license plates in violation of N.Y. Veh. & Traf. Law § 4024, and unlicensed operator in violation of N.Y. Veh. & Traf. Law § 509(1). *See* Pl.'s 56.1 Counterstmt. ¶ 45.

### B. <u>Procedural Background</u>

By way of a May 5, 2022 Complaint, Annunziata, proceeding *pro se*, commenced this action against Fanwick, the SCPD, and Suffolk County (the "County"). DE [1]. On June 21, 2022, still proceeding *pro se*, Plaintiff filed an Amended Complaint ("Am. Compl."), which is the operative pleading in this action.[1] DE [6]. In the Amended Complaint, Annunziata makes identical factual allegations, while naming as Defendants Fanwick, John Doe #1, John Doe #2, and Police Chief Robert Waring. *Id.* Plaintiff's claims against the County and Waring were subsequently dismissed, *see* DE [7], leaving Fanwick as the only named Defendant.

Although Plaintiff does not enumerate specific causes of action in his pleadings, he alleges the facts described above, and the parties agree that his claims arise under Section 1983 for use of excessive force in violation of the Fourth

[1] *Pro bono* counsel was subsequently appointed, *see* DE [67], and Annunziata submitted his opposition to the instant motion through counsel.

Amendment and deliberate indifference to his need for medical care in violation of the Fourteenth Amendment.

On December 2, 2025, Fanwick filed the instant motion for summary judgment. DE [88]. Defendant asserts that there are no questions of material fact regarding the merits of Plaintiff's claims, and that, even if there were, he is entitled to qualified immunity. *See generally* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), DE [88-12]. Plaintiff opposes each of Defendant's arguments. *See generally* Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl.'s Opp'n"), DE [88-13].

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-427(GTS)(TWD), 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment."). In contrast, "the Court may decide all questions of law on summary judgment." *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022) (collecting cases).

## III. DISCUSSION

Plaintiff asserts Section 1983 claims arising under the Fourth Amendment for excessive force and the Fourteenth Amendment for deliberate indifference to his need for medical assistance. *See* Am. Compl. § 2. Fanwick argues that Plaintiff's claims fail on their merits and that he is entitled to qualified immunity. *See* Def.'s Mem. at

9-11; Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Reply. Mem."), DE [88-23], at 4. As described herein, questions of fact exist regarding the merits of Plaintiff's claims and the issue of qualified immunity, making summary judgment inappropriate.

### A. <u>Credibility Disputes</u>

Initially, Defendant attacks Plaintiff's credibility regarding the incident. *See* Def,'s Mem. at 4-6. Fanwick asserts that allegations in the Amended Complaint that multiple officers caused his injuries contradict Plaintiff's deposition testimony, in which he stated he was "in the process of coming to" and did not recall how many were involved in effectuating his arrest, making summary judgment appropriate. Def.'s Mem. at 4-5. The Court disagrees.

"[I]t is well-established that assessments of credibility and choices between conflicting versions of events are matters for the jury and not for the court on summary judgment." *Wang v. Desal*, No. 23-CV-9402(KHP), 2025 WL 588584, at *3 (S.D.N.Y. Feb. 24, 2025) (citing *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 2011)); *see Chimelis v. Cnty. of Suffolk*, No. 21-CV-7079(FB), 2025 WL 458242, at *6 (E.D.N.Y. Feb. 13, 2025) (holding that it would be impermissible to make credibility determinations regarding "what transpired during and after" the plaintiff's arrest); *Kohutka v. Town of Hempstead*, 22 F. Supp. 3d 378, 382 (E.D.N.Y. 2014) ("To the extent the Defendants challenge the Plaintiff's testimony as unsupported by the remainder of the record, the Court notes that it cannot weigh the evidence and attempt to resolve these credibility issues on summary judgment."). To the extent

there are discrepancies between Plaintiff's pleadings and his deposition testimony, the resolution of any inconsistencies can be addressed at trial. *See Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015) (holding that the defendant's dispute regarding the veracity of the plaintiff's claim was "typically the type of credibility determination that must be left to a jury").

In reaching this conclusion, the Court notes that Annunziata filed the operative pleading *pro se*, and discrepancies between a *pro se* pleading and deposition testimony do not necessarily affect his credibility of the latter as a matter of law. *See Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) (holding, in an action involving a *pro se* plaintiff, that "[a]ssessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment") (internal quotation marks omitted); *Sanders v. City of New York*, No. 09-CV-2393(JFB)(SIL), 2015 WL 5518589, at *2 (E.D.N.Y. Sept. 16, 2015) (holding that, in a case with a *pro se* plaintiff, purported inconsistencies in the plaintiff's descriptions of the incident are properly addressed by the trier of fact).

Defendant's reliance on *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), *see* Def.'s Mem. at 4, does not impact the analysis. The Court in *Jeffreys* observed that the district court may "make some assessments of the plaintiff's account" in the "rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete." *Jeffreys*, 426 F.3d at 554. That is not the case here. To this end, it bears noting that Fanwick – the only remaining named Defendant – does not dispute his involvement in the arrest

or that he punched Annunziata in the torso. *See* Pl.'s 56.1 Counterstmt. ¶ 23. Accordingly, the Court declines to discredit Plaintiff's allegations as a matter of law at this stage and summary judgment on this basis is denied.

**B. <u>Excessive Force</u>**

The Fourth Amendment protects individuals against "unreasonable searches and seizures," U.S. Const. amend. IV, and prohibits law enforcement officers from using unreasonable and therefore excessive force in effectuating an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1869 (1989); *Harrell v. Cnty. of Nassau*, No. 10-CV-5894(MKB), 2013 WL 5439137, at *5-6 (E.D.N.Y. Sept. 27, 2013) (explaining that excessive-force claims arising from an arrest or investigatory stop are analyzed under the Fourth Amendment). To establish an excessive-force claim, a plaintiff must demonstrate that the force employed by the defendant was objectively unreasonable under the circumstances. *See Graham*, 490 U.S. at 396, 109 S. Ct. at 1869). Courts consider the totality of the circumstances, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396, 109 S. Ct, at 1869); *see Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d 378, 397 (E.D.N.Y. July 29, 2020) (applying the *Graham* factors in determining whether force used during an arrest was excessive); *Pittman v. Inc. Vill. of Hempstead*, 49 F. Supp. 3d 307, 315-16 (E.D.N.Y. 2014) (same). These considerations are not applied mechanically and are

meant to evaluate whether the force employed was reasonably related to the circumstances. *See Tracy*, 623 F.3d at 96-97. "[The extent of injury' is a 'relevant' but non-dispositive factor in evaluating an excessive force claim." *Gutierrez v. City of N.Y.*, No. 18-CV-3621(MKB), 2021 WL 681238, at *14 (E.D.N.Y. Feb. 22, 2021) (quoting *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010)). Additionally, force does not have to cause "serious long lasting harm" to be considered excessive. *Graham v. City of N.Y.*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013). Because the objective reasonableness inquiry is inherently fact-specific, courts must exercise particular care when resolving excessive-force claims at the summary-judgment stage. *See Amnesty Am.*, 361 F.3d at 123; *Harrison*, 498 F. Supp. 3d at 394 ("At the summary judgment stage, because of the fact-specific nature of the objective reasonableness inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.") (internal quotations omitted).

Considering the *Graham* factors in the light most favorable to Plaintiff, questions of fact exist regarding whether the force Fanwick used while arresting Annunziata was excessive. First, with the exception of the tampering with evidence charge, which is not inherently violent, each of the crimes with which Plaintiff was charged are either misdemeanors or traffic violations. *See* N.Y. Penal Law § 220.03, N.Y. Penal Law § 205.30, N.Y. Penal Law § 215.40(2), N.Y. Veh. & Traf. Law § 511(1)(a), N.Y. Veh. & Traf. Law § 4024, and N.Y. Veh. & Traf. Law § 509(1). This

weighs against the severity of the charges and the necessity to use force. *See Ketcham v. City of Mt. Vernon*, 992 F.3d 144, 150 (2d Cir. 2021) (observing that the fact that the criminal charges were misdemeanors weighed in the plaintiff's favor with respect to the use of force); *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019) (denying summary judgment where "the crime at issue was a relatively minor one" and the plaintiff did not pose a threat). Moreover, as Fanwick found Annunziata unconscious behind the wheel of his car, the threat he posed is, at least, a question of fact for the jury to decide. To this end, Defendant's reliance upon *Husbands ex rel. Forde v. City of N.Y.*, 335 F. App'x 124, 128 (2d Cir. 2009) to justify the use of force in effectuating the arrest here to protect the public is misplaced. In *Husbands*, a police officer punched the plaintiff where there was surrounding gunfire to force him to submit to arrest. *Id.* Here, Annunziata was an unarmed motorist asleep at the wheel of his car. Finally, the parties' dispute as to whether Plaintiff used his elbows to resist arrest creates another question of fact for the jury, particularly in light of the fact that it is undisputed that Fanwick punched Annunziata in the torso during the course of the arrest. *See* Defs.' 56.1 Stmt. ¶ 23.

The totality of these circumstances establishes issues of fact regarding whether Fanwick used excessive force. Accordingly, Defendant's motion is denied with respect to Plaintiff's Fourth Amendment cause of action.

### C. <u>Indifference to Medical Needs</u>

The Due Process Clause of the Fourteenth Amendment protects an arrestee and pretrial detainee from deliberate indifference to his serious medical needs. *See*

U.S. Const. amend. XIV; *see also Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) (quoting *Dollard v. City of New York*, 408 F. Supp. 3d 231, 236 (E.D.N.Y 2019)).[2] To establish deliberate indifference to medical needs under the Fourteenth Amendment, a plaintiff must demonstrate: (1) that he suffered from a sufficiently serious medical need; and (2) that the defendant acted with deliberate indifference to that need. *Charles v. Orange Cnty*, 925 F.3d 73, 87 (2d Cir. 2019); *see Hernandez v. Cnty. of Nassau*, No. 17-CV-1646(MKB), 2022 WL 513929, at *12-14 (E.D.N.Y. Feb. 7, 2022) (applying *Charles*'s two-part standard to deliberate-indifference claim at summary judgment). The first requirement is objective and requires a plaintiff to demonstrate that he was actually deprived of adequate medical care and that the resulting deprivation was sufficiently serious. The inquiry is contextual, and there is no "static test" for determining whether a particular deprivation is sufficiently serious. *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citation omitted).

The second examines the defendant's state of mind. A detainee proceeding under the Fourteenth Amendment need not establish that the defendant was subjectively aware that his conduct created a substantial risk of serious harm. *See Darnell*, 849 F.3d at 30. Rather, the plaintiff must establish that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee

[2] A pretrial detainee's claim arises under the Fourteenth Amendment because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner , , , ," *Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks and citation omitted).

even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*; *see Charles*, 925 F.3d at 87 (holding that *Darnell*'s objective *mens rea* standard applies to claims concerning inadequate medical treatment). The actual medical consequences flowing from a denial or delay of care are "highly relevant" to whether the deprivation exposed the plaintiff to a significant risk of serious harm. *Charles*, 925 F.3d at 86.

Applying these standards, summary judgment is denied. Initially, Plaintiff has submitted sufficient evidence of a serious medical need. According to Annunziata, at the time of his arrest, one or more officers broke his ribs. *See* Annunziata Dep. Tr. at 43:2, 47:21-22. Consistent with this claim, Fanwick admits that he punched Plaintiff in the torso. *See* Pl.'s 56.1 Counterstmt. ¶ 33. Moreover, medical records indicate that Annunziata suffered a collapsed lung requiring a chest tube. *See* Bell Decl. Ex. 5. These facts, if credited, are sufficient to establish a serious medical need.

The subjective prong requires that the plaintiff establishes "either that the defendant knew that failing to provide the complained of medical treatment would pose a substantial risk to [the plaintiff's] health or that the defendant should have known it would pose such a risk." *Charles*, 925 F.3d at 87. Here, a reasonable juror may find that Defendant was objectively reckless and should have known that Plaintiff needed medical attention. As described above, Plaintiff testified that he sought medical attention "off the rip." Pl.'s Dep. Tr. at 47:21-22. Nevertheless, according to Plaintiff, Fanwick waited four-and-a-half hours to call for an ambulance

to provide medical treatment. While Defendant denies Annunziata's timeline, and more specifically that he complained about medical needs earlier, whether Fanwick knowingly waited over four hours to seek medical assistance creates a question of fact on deliberate indifference sufficient to warrant a trial and deny summary judgment on this issue. *See Martinez v. D'Agata,* No. 16-CV-44(VB), 2019 WL 6895436, at *10 (S.D.N.Y. Dec. 18, 2019) (holding that "a reasonable juror could conclude that the approximately four hour window . . . constituted an unreasonable delay of medical care"). This is an issue to be determined by the jury. *See Warren v. City of New York Dep't Corr. Med Staff*, No. 12-CV-1125(LB), 2021 WL 1163105, at*8-9 (E.D.N.Y. Mar. 26, 2021) (denying motion for summary judgment where factual disputes existed regarding whether the defendant's physician refused additional medical attention despite being informed that the plaintiff's medical condition had not improved); *Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 471-72 (E,D.N.Y. 2011) (denying motion for summary judgment on deliberate indifference claim where conflicting evidence concerning the arrestee's symptoms, the officers' knowledge, and the need for immediate hospitalization presented issues of material fact).

Accordingly, questions of fact exist regarding Plaintiff's claim for deliberate indifference to medical needs, rendering summary judgment inappropriate.

**D. <u>Qualified Immunity</u>**

Qualified immunity protects government officials, including police officers, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Kerman v. City of N.Y.*, 374 F.3d 93, 108 (2d Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2739 (1982)). At the summary judgment stage, courts considers "(1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy*, 623 F.3d at 96. "Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Chimelis*, 2025 WL 458242, at *4 (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)).

Here, the Court declines to determine whether Fanwick is entitled to qualified immunity as a matter of law. As described above, questions of fact exist regarding his use of force and when he knew or should have known about Plaintiff's medical needs. If the jury credits Annunziata's version of the facts, they could show that Fanwick violated Plaintiff's clearly established constitutional rights, defeating Fanwick's qualified immunity defense. *See Hemphill v. Scott*, 141 F.3d 412, 418 (2d Cir. 1998) (holding that summary judgment based either on the merits or on qualified immunity requires that no disputes about material facts remain"); *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 542 (E.D.N.Y. 2005) ("[T]he same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the summary judgment stage . . . "). Accordingly, Fanwick is not entitled to summary judgment on qualified immunity grounds at this juncture.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment is denied. The Court has scheduled a pretrial conference for October 21, 2026 at 10:30 a.m. in Courtroom 820 of the Central Islip courthouse. The parties are advised to review the Court's Individual Rules of Practice regarding submission of a Joint Pretrial Order.

Dated: Central Islip, New York
September 26, 2026

**SO ORDERED**

*/s/ Steven I. Locke*
STEVEN I. LOCKE
United States Magistrate Judge